INZER, Justice:
This is an appeal by Mississippi State Highway Commission from a judgment of a Special Eminent Domain Court convened in the County Court of Lauderdale County awarding Mrs. Bessie Owen $85,000 for the taking of .45 acre of her land in the City of Meridian.
Mrs. Owen is the owner of 9.3 acres of land west of and fronting for 375 feet on U. S. Highway 11. Highway 11 is also the business route for U. S. Highway 80 and State Highway 19. It connects with Tom Bailey Drive a short distance south of the Owen property. Both Tom Bailey Drive and Highway 11 are heavily traveled highways. Located on the 9.3 acres is a large stock barn which is used in connection with Owen Brothers Packing Company located to the north of the subject property. It is not contended that this building was damaged by the taking. Thirty-one feet south of the stock barn is a large, well-constructed brick building. At the time of the trial and for many years prior thereto it had been rented by Dufour International, Inc., a local International Harvester dealership which sells and repairs tractors, trucks and farm equipment. Dufour originally leased this building for five years at a monthly rental of $500. The lease had expired and had not been renewed by Du-four because of the uncertainty as to whether the building would be suitable after the land is taken by the commission. Prior to the taking there was 35 feet between the Dufour Building and the south boundary of Mrs. Owen’s property. This 35 feet was paved with concrete and this concrete apron extended around the entire building. The rear portion of the building was used as a repair shop for trucks, tractors and other equipment. Access to this portion of the building was had by side doors on the north and south side of the building as well as to the rear. The balance of the Owen property was fenced and used in connection with the cattle barn as a holding area for stock to be used by the packing company.
The .45 acres taken by the commission is in an irregularly shaped tract. It includes about 31 feet of frontage measured on an angle abutting on Highway 11. The north line of the property taken runs within 5 feet of the southwest corner of the Dufour Building, destroying access to the entrance to the building on the south side. When *230 this line reaches a point approximately 30 feet west of the building its runs north about 35 feet, thence in a westerly direction about 330 feet to the south boundary of the Owen’s property. Included in the take is a gasoline tank, a pump and a part of the concrete apron at the rear of the building.
The testimony discloses that GM & O Railroad owns a 150 foot right of way immediately south of the Owen’s property. The railroad company has owned this property for many years but has never constructed a track on it. In order to improve Tom Bailey Drive and provide access to it from Highway 11, it was necessary that the highway take a part of the railroad property. The purpose of taking the Owen property is to exchange it with the railroad company. After the exchange, the railroad will have only a fifty foot right of way, which will include the Owen property taken. The testimony also discloses that if and when the railroad company ever builds a track over its right of way, it will be necessary that the track be elevated to a height sufficient to cross the highways.
Two qualified appraisers testified for the highway commission and two qualified appraisers testified for the landowners. Their appraisals are as follows :
FOR THE COMMISSION
Mr. Turner testified that a fair market value prior to the taking was $237,000 and that the fair market value of the property after the taking was $226,000 with a total damage of $11,600.
Mr. Thames testified that the fair market value of the property before the taking was $267,800 and the fair market value after the taking was $253,500, with a total damage of $14,300.
FOR THE LANDOWNER
Mr. Green testified that before the taking the fair market value of the-property was $801,058 and after the taking the fair market value of the property was $687,908, with a total damage of $113,150.
Mr. Bounds testified that the fair market value of the property before the taking was $738,793 and the fair market value after the taking was $621,074, with a resulting damage of $117,719.
The vast difference in the value fixed by the appraisers for the commission and the landowner resulted from a difference of opinion between them as to the proper method of appraisal to be used. The appraisers for the commission were of the opinion that the highest and best use of the front 200 feet of the Owen property was high commercial, with the balance being suitable for industrial purposes. It was their opinion that the buildings on the property added no value to the highest and best use of the property and were actually a detriment. While on the other hand, the appraisers for the landowner were of the opinion that the building did add value to the highest and best use of the property and that the Dufour Building was damaged as a result of the taking. Also included in their estimate of damage from the take was the value of the concrete, fencing and the gasoline tank and pump. In arriving at the fair market value of the entire tract before the taking, they used the reproduction cost method relative to the buildings on the property.
The jury "after hearing testimony and viewing the property returned a verdict awarding the landowner damages in the amount of $85,000, hence this appeal.
The principal issue raised by the assignment of error is the issue whether the verdict of the jury in awarding damages is so excessive as to evince bias, passion and prejudice on the part of the jury. In determining whether the verdict was grossly excessive, other questions raised by the assignment of error will be considered. Included is the question of whether the testi *231 mony of the appraisers for the landowner as to reproduction cost was admissible and whether such testimony contributed to an excessive verdict. The commission admits that reproduction cost method is an approved method of appraisal in arriving at the fair market value of property,' but argues that the tesimony of an appraiser using this method should be admitted only under certain limited circumstances. The commission contends in this case that the witnesses for the landowner actually equated the value arrived at through the cost reproduction method with the fair market value in an improper prejudicial manner.
The only Mississippi case cited that deals with replacement or reproduction cost in arriving at the fair market value is Mississippi State Highway Commission v. Hudgins, 182 Miss. 518, 181 So. 719 (1938). In that case the buildings were on the property taken by the commission. The trial court admitted, over the objection of the commission, testimony relative to the replacement cost of the buildings taken. The theory was that it would be of assistance to the jury in arriving at the fair market value of the property. On appeal, this Court held that there was authority for the admission of this testimony so that it would assist the jury in determining the value of the improvements, but such costs could not be taken as fixing the value without regard to depreciation.
It is now generally recognized that evidence of reproduction cost can be valuable in helping a jury reach its determination. However, it can also be dangerous and its use may lead to unjustifiably high verdicts, because the reproduction cost approach tends to set the very highest market value. It is also recognized that reproduction cost is not direct evidence of market value, but is only a factor to be considered by the jury in arriving at a fair market value.
 The question of whether testimony relative to reproduction cost is admissible in a given case lies largely in the sound discretion of the trial judge. Such testimony is always admissible when it is established that the improvements are reasonably adapted to the land and the depreciated value of the improvements adds to the value of the entire property by the amount of their depreciated value.
We hold that in this case the trial court did not abuse its discretion in admitting the testimony of the appraisers for the landowner based upon the reproduction cost theory. This testimony was admissible not as direct evidence of market value, but as a factor that the jury could consider, along with the other evidence, in arriving at the fair market value. We are of the opinion that when such testimony is admitted, the condemnor is entitled to an instruction that such testimony is not evidence of market value but only a factor to be considered along with the other testimony in arriving at the fair market value. The instructions offered by the commission relative to reproduction cost were properly refused by the trial court in the form offered. They went much further than simply pointing out to the jury that reproduction cost was not evidence of market value, but only a factor to be considered along with the other evidence in arriving at the fair market value of the property. The instructions offered amounted to a comment upon the evidence.
Also included in the commission’s assigned error on whether the verdict of the jury was grossly excessive is the granting to the landowner the following instruction:
The Court instructs the jury for the landowner, Bessie Owen, that before a suit can be filed for the taking of private property for use by a railroad there must be a present need for use of the property by the railroad in its service to *232 the public generally, and in this case the jury must not consider in arriving at its verdict that the railroad may not build a railroad track over the property taken from Mrs. Bessie Owen by the Mississippi State Highway Commission.
We are of the opinion that the granting of this instruction was prejudicial error and we are of the opinion that it contributed to what we deem to be a grossly excessive verdict. In the first place, this instruction tends to raise the issue of whether there was any necessity for the taking. The question of whether the commission had the right to take the property and in turn trade it to the railroad company in exchange for the right of way owned by the railroad was not an issue in this case. Furthermore, the instruction tells the jury that it could not consider the testimony, admitted without objection, relative to the fact that the railroad company had owned the right of way for many years and had not built a track over it. In effect, this instruction tells the jury that a railroad track would be built over the property. Certainly, the probability that a railroad track would be built was a factor affecting the market value that the jury could consider, but the instruction granted went much further than proper.
After carefully considering and discussing this case en banc, we are of the opinion that the judgment should be reversed and the cause remanded. We are also of the opinion that this is one of those cases where we should suggest a remittitur, and we have concluded that if appellee will within fifteen days after the judgment of this Court becomes final, enter a remittitur of $25,000, judgment will be affirmed here for $60,000. Otherwise, the cause will be reversed and remanded for another trial.
Affirmed on the condition of a remitti-tur, otherwise, reversed and remanded.
All Justices concur, except GILLESPIE, C. J., who took no part.